A95A0504. DRUG LINE, INC. v. SERO-IMMUNO
DIAGNOSTICS, INC.
(458 SE2d 170)

BIRDSONG, Presiding Judge.

Drug Line, Inc. (Drug Line) sued Sero-Immuno Diagnostics, Inc. (SID) to enforce an agreement by which Drug Line contends it acquired worldwide exclusive marketing and distribution rights to a new HIV test kit developed by SID. SID contends essentially that the contract is too vague for enforcement, with gaps too great to be filled by the Uniform Commercial Code, and that it lacks mutuality because Drug Line was not required to buy a certain quantity of test kits.

Drug Line contends the contract is valid as an exclusive marketing and distribution agreement under the so-called "gap fillers" provisions of OCGA §§ 11-2-204 (3) and 11-2-309 (3). The trial court granted summary judgment to SID, holding that the contract is not a "requirements" or "output" contract controlled by the UCC but is a distributorship contract controlled by common law principles; that the contract is extremely vague and indefinite and that there is no clear indication of agreement as to the term of contract, geographical limits of the contract or the purchase price for the products. Drug Line appeals. *Held*:

This contract is too vague, indefinite and uncertain to enforce either under the Georgia Commercial Code at OCGA §§ 11-2-204 (3) and 11-2-309 (3) or under common law principles.

The contract recites that Drug Line desires to obtain the exclusive worldwide rights to purchase, market and distribute the HIV test kits; that "upon receipt of $100,000 . . . [SID] will use the funds to upgrade the facilities in order to provide HIV 1 and HIV 2 test kits in amount necessary to meet future obligations"; that "upon the delivery of orders" by Drug Line for 100,000 kits per year of the Aids Kit at a price of $3,700,000, SID "will continue to grant to [Drug

Line] the Exclusive Worldwide Rights for purchasing marketing and distributing the Aids Test Kits"; and that "[*SID*] *and* [*Drug Line*] *agree to execute another agreement containing further details within approximately thirty (30) days of execution of this agreement.*" (Emphasis supplied.)

Not even the first object of the agreement can be determined. It is unclear who must pay $100,000 and what SID must do to "upgrade the facilities" to provide test kits "in amount necessary to meet future obligations," and what that amount may be, if anything, is entirely a matter of conjecture. It appears Drug Line seeks to get and keep *forever* the exclusive worldwide right to purchase, market and distribute the HIV test kits, and it can do this so long as Drug Line merely "delivers orders" for 100,000 kits per year "at a price of $3,700,000." Nothing requires Drug Line to actually pay SID $3,700,000 at any time; nothing requires SID to produce any number of kits; nothing requires Drug Line to actually take delivery of 100,000 kits; nothing requires Drug Line to market or distribute any kits. There is no requirement that Drug Line order, pay for, market or distribute more than 100,000 kits per year, even if demand were far greater. The only thing reasonably certain about the contract is that it would prevent SID from selling or distributing kits to anybody other than Drug Line, except SID's present customers, at current prices and quantities.

Most telling, the agreement provides that SID and Drug Line "agree to execute another agreement containing further details within [30] days." This leaves to complete conjecture and uncertainty what the parties left unsettled, what was finally agreed on, or what might be added or changed.

The so-called "gap filler" provision in OCGA § 11-2-204 (3) states that even though terms are left open, a contract for sale does not fail for indefiniteness "if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." We do not read this provision to obliterate the common law rule that the first requirement of law of a valid contract is that there be *a meeting of the minds of the parties* and mutuality, and the agreement must be expressed plainly and explicitly enough to show what the parties agree upon; a contract cannot be enforced if its terms are incomplete or incomprehensible. *Hughes v. McMichen*, 164 Ga. App. 304, 305 (296 SE2d 233), citing *Bagwell-Hughes, Inc. v. McConnell*, 224 Ga. 659, 661 (164 SE2d 229). An agreement which is entirely subject to conjecture cannot be enforced. *Patel v. Gingrey Assoc.*, 196 Ga. App. 203, 206 (395 SE2d 595). This is true when the contract is construed under Georgia's Commercial Code or common law, or whether it be a sales or distribution agreement, or a requirements or output contract. The Commercial Code requires a "reasonably certain basis

for giving an appropriate remedy" for breach; if it cannot be determined what the parties intended, it cannot be determined what is a breach, or what is an appropriate remedy.

OCGA § 11-2-309 (3) adds no substance to Drug Line's arguments.

It seems that, in principle, Drug Line sought to tie up the exclusive world rights to these kits without actually having to buy or distribute a single kit; at the most liberal interpretation, construing the agreement to require Drug Line to buy 100,000 kits from SID at $37 per kit, the agreement requires Drug Line to buy no more than 100,000 kits and prevents SID from manufacturing and selling to anyone else except previous customers. The agreement would in perpetuity restrain SID from manufacturing and selling more than 100,000 kits at any price, and those never for more than $37 per kit, saving only the "current quantities" SID sells to its present customers, at "current prices." Such an agreement would be unconscionable to say the least. See *R. L. Kimsey Cotton Co. v. Ferguson*, 233 Ga. 962, 966 (4) (214 SE2d 360).

*Judgment affirmed. Johnson and Smith, JJ., concur.*

DECIDED JUNE 5, 1995.

*Venema, Thomas & Doherty, Richard R. Thomas*, for appellant.
*Troutman Sanders, Alan E. Lubel*, for appellee.