A02A1806, A02A1807. BRITT et al. v. KELLY & PICERNE, INC. et al. (two cases).

(575 SE2d 732)

BLACKBURN, Chief Judge.

Youlon Britt, individually and as administrator of the estate of the decedent, Anthony Britt, and Erica Johnson, as next friend of Anthony Britt's minor son, filed this action against the appellees[1] for the wrongful death, pain and suffering, and medical, funeral, and other expenses of the decedent. In Case No. A02A1806, appellants appeal the trial court's dismissal of their claims against Jeffrey Hafer for their failure to exercise due diligence in obtaining service. In Case No. A02A1807, appellants appeal the trial court's grant of summary judgment to the appellees, contending that appellees breached their duty to protect Anthony Britt from an armed assailant at an apartment complex operated by appellees. For the reasons set forth below, we affirm.

*Case No. A02A1806*

Appellants' contention that the trial court erred in granting Jeffrey Hafer's motion to dismiss is rendered moot by our holding in Case No. A02A1807, below, that the trial court did not err in granting summary judgment to all appellees.

*Case No. A02A1807*

Appellants assert that the trial court erred in granting the appellees' motion for summary judgment because the appellees had superior knowledge of the risk the assailant posed to the decedent, and because the appellees were negligent in performing their duties. We find no merit in either assertion.

"Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. In reviewing a trial court's ruling on a motion for summary judgment, we apply a de novo standard of review, and we view the evidence in a light most favorable to the nonmovant." (Citation omitted.) *Connell v. Head.*[2]

Viewed in a light most favorable to appellants as the nonmovants, the record shows that Valerie Britt, Anthony Britt's sister, had

---

[1] Appellees are Kelly & Picerne, Inc.; Picerne Development Corporation of Georgia; Fickling & Walker Asset & Property Management, Inc., separately, and as general partner in Hickland Arms, Ltd., and as limited partner in Fickling & Walker; Daniel W. Rose; Jeffrey Hafer, individually and d/b/a Hafer Security Protective Services, Inc.; and Antonio Bernard Colton.

[2] *Connell v. Head,* 253 Ga. App. 443 (559 SE2d 73) (2002).

broken off a relationship with Antonio Colton, the father of her two children, in the year before Anthony Britt's death. The relationship had been a violent one, and the two had often fought. Valerie Britt testified that Colton had pulled a pistol on her when she was eight months pregnant. She also testified that two months before her brother was shot by Colton, Colton had come to her apartment at Eastgate Apartments, struck her, and threatened to kill her. Valerie Britt informed an Eastgate security guard; the guard called the police, and Colton was removed from the property.

On October 25, 1997, Anthony Britt was visiting Valerie Britt at her apartment. While Anthony Britt, his sister, and others were talking in front of her apartment, Colton approached them. Colton was angry because Valerie Britt had a new boyfriend. He told her that he did not want anyone around his kids and pushed Valerie; Valerie pushed back. Anthony Britt told Colton to stop. At this point, Colton pulled out a pistol, aimed it at Anthony Britt, and pulled the trigger. When the gun did not fire, Colton ran. Valerie Britt called the police, who arrived shortly thereafter but did not find Colton. Valerie Britt also informed the security guards at Eastgate of the incident.

On October 27, 1997, Colton returned to Eastgate Apartments. Valerie Britt saw him outside another apartment with some friends about 6:00 p.m., but she did not inform Eastgate security of Colton's presence on the premises. Not long after, Anthony Britt arrived at his sister's apartment.

At approximately 9:00 p.m. that night, Valerie Britt again saw Colton outside one of the apartments. She informed her brother of Colton's presence, but he did nothing, going to the apartment of his girlfriend, who lived downstairs from Valerie Britt. Neither of the Britts informed either Eastgate security or the police that Colton was on the premises.

About 45 minutes later, Chris Echols, Valerie Britt's boyfriend, saw Colton leaving Eastgate. He told Anthony Britt to come with him because "he was fixing to go get" Colton. Anthony Britt did not join Echols, who continued to follow Colton, but instead drove his car and parked on the side of the road where Echols confronted Colton. Echols asked Colton what he wanted to do, and Colton replied that he was not going to fight but was "just going to bust one of y'all." When Colton said this, Anthony Britt got out of the car and told Echols to come on with him, but Echols refused. At this point, Colton pulled out a handgun. Echols began running, and Britt tried to get back into his car. Colton fired the gun four or five times, killing Britt, and then ran.

The appellants argue that the appellees had superior knowledge of the threat posed to Anthony Britt by Colton, and that Eastgate Apartment's security was negligent in performing its duties. Assum-

ing, without conceding, that the appellees' actions in allowing Colton on the apartment grounds constituted a breach of the duty they owed to Britt, it is clear that the breach of that duty was not the proximate cause of Britt's death. "[B]reach of duty alone does not make a defendant liable in negligence. The rule remains that the 'true ground of liability . . . is the *superior* knowledge of the proprietor of the existence of a condition that may subject the invitee to an unreasonable risk of harm.' " *Howell v. Three Rivers Security.*[3] In light of the facts that Colton had drawn a gun on Britt, aimed it at him, and pulled the trigger only two days before Britt was killed, and that Valerie Britt had warned him of Colton's presence on the premises, the appellants "cannot seriously contend that appellees had superior knowledge of [Britt's] peril under the circumstances." Id.

Given Britt's first-hand knowledge of the danger posed by Colton,

> [t]he question then becomes whether [Britt] exercised ordinary care for his safety. A landlord is not liable for a plaintiff's injuries caused by a dangerous condition if the plaintiff had equal or superior knowledge of the danger and failed to exercise ordinary care to avoid the danger. "Although the issue of a plaintiff's exercise of due diligence for his own safety is ordinarily a question for the jury, it may be summarily adjudicated where the plaintiff's knowledge of the risk is clear and palpable."

(Citation omitted.) *Johnson v. Atlanta Housing Auth.*[4]

Here, Britt clearly had superior knowledge of the danger posed by Colton's presence on the Eastgate premises and the possibility of a repeat attack. In spite of his knowledge of Colton's violent behavior and propensities, and his presence on the premises that night, Britt made no effort to see to his own safety by either avoiding another encounter with Colton or seeking protection from the police or security guards. On the contrary, Britt drove his car to where Echols had confronted the departing Colton and got out of the car. Under these circumstances, in which Britt voluntarily placed himself at risk, the appellees cannot be held liable, and the trial court properly granted their motions for summary judgment. *Johnson,* supra; *Howell,* supra. See also *Reid v. Augusta-Richmond County Coliseum Auth.;*[5] *Hansen v. Etheridge.*[6]

---

[3] *Howell v. Three Rivers Security,* 216 Ga. App. 890, 892 (456 SE2d 278) (1995).

[4] *Johnson v. Atlanta Housing Auth.,* 243 Ga. App. 157, 160 (3) (532 SE2d 701) (2000).

[5] *Reid v. Augusta-Richmond County Coliseum Auth.,* 203 Ga. App. 235, 239 (2) (416 SE2d 776) (1992).

[6] *Hansen v. Etheridge,* 232 Ga. App. 408 (501 SE2d 517) (1998).

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED DECEMBER 13, 2002.

*Graylin C. Ward*, for appellants.
*Swift, Currie, McGhee & Hiers, Lynn M. Roberson*, for appellees.