A07A0209. DONCHI, INC. v. ROBDOL, LLC et al.

(640 SE2d 719)

BLACKBURN, Presiding Judge.

In this action arising from a sale of property, plaintiff Donchi, Inc. sued defendants Robdol, LLC, Robert Steele, David McQuary, and Florida Commercial Exchange ("FCE"), alleging fraud, breach of contract, and unjust enrichment. Robdol and Steele successfully moved for summary judgment as to all claims, and Donchi now appeals. For the reasons set forth below, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c); *Britt v. Kelly & Picerne, Inc.*[1] A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*[2]

So construed, the evidence shows that David McQuary, the principal of FCE, approached Leonard Morris, Jr., the president of Donchi, to express an interest in purchasing its golf course and surrounding undeveloped property (the "property") located in Tift County, Georgia. In February 2003, McQuary and Morris negotiated a purchase agreement in which Donchi would convey the property to FCE and McQuary for $2,250,000. The agreement further provided that $300,000 of the purchase price would be paid by conveying McQuary's beach house in Wakulla County, Florida, to Morris.

Shortly after the agreement was executed, McQuary informed Morris that Robdol, a limited liability corporation with Robert Steele as its managing member, would be providing the financial backing for

[1] *Britt v. Kelly & Picerne, Inc.*, 258 Ga. App. 843 (575 SE2d 732) (2002).

[2] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

the transaction. Steele had previously provided McQuary with financial backing for other transactions, and at the time the purchase agreement was negotiated and executed, McQuary owed Steele approximately $400,000. Steele agreed to have Robdol provide the financial backing for the purchase of Donchi's property with the hope that development of the property surrounding the golf course would allow McQuary to repay some of his debt while also providing a return on Robdol's investment.

In May 2003, to memorialize Robdol's involvement, the parties executed an addendum to the original purchase agreement, which assigned nearly all of McQuary's and FCE's rights and obligations as buyers of the property to Robdol, including payment of the majority of the purchase price. However, with respect to the transfer of McQuary's beach house, the addendum included a condition which provided that

> [r]egardless of the assignment to Buyer's assignee, Buyer shall remain fully responsible for the transfer of the Shell Point, Florida, beach home (the "Beach Home") to Seller, and for all covenants, costs of transfer and payments relating thereto. Buyer's assignee shall have no obligations or liability in that regard, except that, if Buyer fails or refuses to transfer the Beach Home to Seller simultaneously with the Closing, then Seller may elect to terminate the Contract by returning the Deposit to Buyer's assignee . . . without the Beach Home, understanding that Buyer's assignee shall have fully performed under the Contract by delivering at Closing the sum of $1,600,000.00 and the Second Mortgage and $350,000.00 promissory note secured thereby, and by paying all of Buyer's closing costs required under the Contract (except costs in connection with the transfer of the Beach Home).

On the same date that the addendum was executed, McQuary and Robdol entered into a separate Assignment and Development Agreement, which also memorialized the assignment of McQuary's rights as buyer of the Donchi property to Robdol and stipulated how the property was to be managed. The Assignment Agreement further provided that the $400,000 debt, which McQuary owed to Steele, would be satisfied upon the closing of the purchase agreement with Donchi and the transfer of the beach house to Morris.

At the closing of the transaction in August 2003, Robdol paid its portion of the $2,250,000 purchase price in the form of $250,000, an assumption of Donchi's existing debt on the property, and a second mortgage in the amount of $350,000. That same day at a separate

closing, McQuary executed a warranty deed conveying the beach house to Morris, which seemingly completed the transaction. Approximately one month later, however, Morris learned that the beach house was foreclosed upon and sold during that month. Acting on behalf of Donchi, Morris initiated this action against McQuary, FCE, Steele, and Robdol, alleging numerous claims including fraud, breach of contract, and unjust enrichment. After discovery, Robdol and Steele moved for summary judgment as to all of Donchi's claims. The trial court granted their motion, and this appeal followed.

1. Donchi contends that the trial court erred in granting summary judgment as to its fraud claim, arguing that defendants provided false oral assurances that the mortgage on the beach house would be maintained and that defendants failed to disclose that the beach house was being foreclosed upon. We disagree.

"In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud." *Ainsworth v. Perreault.*[3] In this case, Donchi's complaint alleges fraud and breach of contract but does not include a claim for rescission. It is therefore apparent that Donchi has elected to affirm the purchase agreement and seek damages arising from the alleged fraud and breach of contract. See id. at 472 (contract affirmed where complaint did not include claim for rescission); *Markowitz v. Wieland*[4] (plaintiff affirmed contract in complaint by seeking only money damages and failing to seek rescission).

(a) *Wilful Misrepresentations.* In cases "where the allegedly defrauded party affirms a contract which contains a merger or disclaimer provision and retains the benefits, he is estopped from asserting that he relied upon the other party's misrepresentation and his action for fraud must fail." *Authentic Architectural Millworks v. SCM Group USA.*[5] See *Ainsworth,* supra, 254 Ga. App. at 472 (1). Stated another way, a merger clause "operates as a disclaimer, establishing that the written agreement completely and comprehensively represents all the parties' agreement." (Punctuation omitted.) *Herman Homes, Inc. v. Smith.*[6] Thus, the viability of Donchi's oral pre-contract misrepresentation claim hinges on whether the purchase agreement contained a valid merger clause.

Construction of a written contract is a question of law for the trial court based on the intent of the parties as set forth in the contract,

[3] *Ainsworth v. Perreault,* 254 Ga. App. 470, 471 (1) (563 SE2d 135) (2002).

[4] *Markowitz v. Wieland,* 243 Ga. App. 151, 153 (1) (532 SE2d 705) (2000).

[5] *Authentic Architectural Millworks v. SCM Group USA,* 262 Ga. App. 826, 828 (2) (586 SE2d 726) (2003).

[6] *Herman Homes, Inc. v. Smith,* 249 Ga. App. 131, 133 (1) (547 SE2d 591) (2001).

which question we review de novo. *Deep Six, Inc. v. Abernathy.*[7] "If the language of a contract is clear and unambiguous, we enforce those terms and need not look elsewhere to assist in the contract's interpretation." *Mariner Healthcare v. Foster.*[8] Here, paragraph 16 of the purchase agreement, titled "Other Agreements," provides: "There are no agreements, promises, or understandings between the parties except as specifically set forth herein. No alterations or changes shall be made to the Contract except those in writing, signed, initialed and dated by all parties." Contrary to Donchi's assertions, the language of paragraph 16, as well as its heading, evinces the intent of the parties involved to have the entirety of their agreement represented solely by the written contract, and thus constitutes a valid merger clause. See *Herman Homes, Inc.*, supra, 249 Ga. App. at 132-133 (1); *Walden v. Smith;*[9] *Rivergate Corp. v. McIntosh;*[10] *Giles v. Nationwide Mut. Fire Ins. Co.*[11] (clause language must be read together with clause heading when construing contract). Cf. *Authentic Architectural Millworks*, supra, 262 Ga. App. at 829 (2) (clause found not to be a merger clause based on its language and "Limited Warranty" title).

Donchi also contends generally that merger clauses are inapplicable to claims of fraud. Citing *Rasmussen v. Martin*[12] and *Woodhull Corp. v. Saibaba Corp.*,[13] Donchi specifically argues that even if the purchase agreement contains a valid merger clause, the doctrine of merger is inapplicable here because defendants' alleged fraudulent misrepresentations were involved in the transaction. We disagree.

In *Rasmussen*, the Supreme Court of Georgia held that "[t]he doctrine of merger is applicable where there is no evidence of mutual mistake (or actionable fraud)." *Rasmussen*, supra, 236 Ga. at 269. However, that case did not involve fraud but whether a contract and a deed with conflicting references to the property at issue were evidence of mutual mistake. Id. at 268. In *Woodhull Corp.*, we held that the merger clause in the relevant contract did not bar plaintiff's fraud claim because the defendant's misrepresentations became terms of the actual contract. *Woodhull Corp.*, supra, 234 Ga. App. at 712 (2). See also *Authentic Architectural Millworks*, supra, 262 Ga. App. at 828 (2) (a).

Here, Donchi argues that fraud was a part of the transaction generally but does not argue that there is evidence of mutual mistake

[7] *Deep Six, Inc. v. Abernathy*, 246 Ga. App. 71, 73 (2) (538 SE2d 886) (2000).
[8] *Mariner Healthcare v. Foster*, 280 Ga. App. 406, 409-410 (2) (634 SE2d 162) (2006).
[9] *Walden v. Smith*, 249 Ga. App. 32, 33 (546 SE2d 808) (2001).
[10] *Rivergate Corp. v. McIntosh*, 205 Ga. App. 189, 193 (421 SE2d 737) (1992).
[11] *Giles v. Nationwide Mut. Fire Ins. Co.*, 199 Ga. App. 483, 484 (1) (405 SE2d 112) (1991).
[12] *Rasmussen v. Martin*, 236 Ga. 267 (223 SE2d 663) (1976).
[13] *Woodhull Corp. v. Saibaba Corp.*, 234 Ga. App. 707 (507 SE2d 493) (1998).

as to the parties' understanding of the purchase agreement's terms or that McQuary's alleged assurances that the beach house's mortgage would be maintained were actually integrated into the terms of the written agreement. Accordingly, the merger clause contained in the purchase agreement is applicable, and Donchi's claim alleging that McQuary's oral assurances regarding the maintenance of the mortgage on the beach house constituted wilful misrepresentations fails. See *WirelessMD v. Healthcare.com Corp.*;[14] *Ainsworth*, supra, 254 Ga. App. at 472 (1); *Herman Homes, Inc.*, supra, 249 Ga. App. at 132-133 (1).

(b) *Nondisclosure.* Where a buyer affirms a sales contract and sues claiming that the seller actively or passively concealed damage or defects in the purchased property, a merger clause in the contract will not serve as the basis for a defense to the suit. *Browning v. Stocks.*[15] Nevertheless, Donchi's contention that the defendants committed fraud by failing to disclose the fact that McQuary's beach house was being foreclosed upon is also without merit. "While concealment of material facts may amount to fraud if the other party could not by exercising ordinary care discover the facts concealed, a person has no obligation to disclose information that is equally available to both parties." *Rhone v. Bolden.*[16] See *Southern Intermodal Logistics v. Smith & Kelly Co.*;[17] *Ross v. Smith.*[18] Generally, whether ordinary care was exercised is a question for a jury to resolve; however, one may fail to exercise ordinary care as a matter of law. See *Klusack v. Ward.*[19]

Here, there is no evidence that Donchi or Morris made efforts to determine the mortgage status of the beach house deeded as part of the purchase agreement. Indeed, Morris conceded that he never contacted the mortgage company regarding the status of the loan and further conceded that he did not attempt to record the deed to the beach house at any time between the closing and his discovery of the foreclosure nearly one month later. Given the failure by Donchi and Morris to exercise ordinary diligence to determine the status of the mortgage, the trial court did not err in granting summary judgment as to Donchi's fraudulent concealment claim. See *Rhone*, supra, 270

---

[14] *WirelessMD v. Healthcare.com Corp.*, 271 Ga. App. 461, 470 (3) (610 SE2d 352) (2005).

[15] *Browning v. Stocks*, 265 Ga. App. 803, 806 (2) (595 SE2d 642) (2004).

[16] *Rhone v. Bolden*, 270 Ga. App. 712, 719 (5) (608 SE2d 22) (2004).

[17] *Southern Intermodal Logistics v. Smith & Kelly Co.*, 190 Ga. App. 584, 586 (1) (379 SE2d 612) (1989).

[18] *Ross v. Smith*, 173 Ga. App. 384, 385 (1) (326 SE2d 527) (1985), rev'd on other grounds, *Smith v. Ross*, 255 Ga. 193 (336 SE2d 39) (1985).

[19] *Klusack v. Ward*, 234 Ga. App. 178, 179 (1) (507 SE2d 1) (1998).

Ga. App. at 720 (5); *Klusack*, 234 Ga. App. at 180 (1); *Southern Intermodal Logistics*, supra, 190 Ga. App. at 586 (1); *Ross*, supra, 173 Ga. App. at 385 (1).

2. Donchi contends that the trial court erred in granting Steele's and Robdol's motion for summary judgment as to its breach of contract claims, arguing that Steele and Robdol did not fulfill the terms of the purchase agreement. We disagree.

As previously stated in Division 1, supra, in our de novo review of a written contract, if the language of the contract is clear and unambiguous, we enforce its terms as written and do not look elsewhere to assist in the contract's interpretation. *Mariner Healthcare*, supra, 280 Ga. App. at 409-410 (2). See *Woody's Steaks v. Pastoria*.[20] Here, the addendum to the purchase agreement required Robdol to fulfill all of the payment obligations in the transaction to purchase Donchi's property, with the notable specific exception being that McQuary was still responsible for the transfer of his beach house. Donchi does not dispute the fact that Robdol fulfilled the specific payment obligations it was required to make according to the terms of the purchase agreement and the addendum, but nevertheless maintains that McQuary's failure to transfer the beach house constituted a failure by Robdol to pay the full purchase price of the agreement. However, given the explicit language in the addendum stipulating that transfer of the beach house remained McQuary's responsibility and that Robdol had no obligations or liability whatsoever with regard to this transfer, the intent of the parties could scarcely have been more clearly and unambiguously expressed. See id. Accordingly, the trial court did not err in granting summary judgment as to Donchi's breach of contract claim.

3. Donchi also contends that the trial court erred in granting summary judgment as to its fraud claims, arguing that Steele and Robdol are liable for any fraud committed by their alleged partner, McQuary. Specifically, Donchi argues that the Assignment of Contract and Development Agreement executed by McQuary and Robdol, as well as McQuary's representations regarding his relationship with Steele and his company, constitute evidence of a partnership. However, regardless of whether McQuary's relationship with Robdol could be characterized as a partnership, this contention is without merit.

As discussed in Division 2, supra, the addendum to the purchase agreement explicitly stipulated that Robdol had no obligations or liabilities with regard to the transfer of McQuary's beach house. Given the parties' clear and unambiguous intent to hold McQuary

---

[20] *Woody's Steaks v. Pastoria*, 261 Ga. App. 815, 817 (1) (584 SE2d 41) (2003).

solely responsible for all aspects surrounding the transfer of his beach house, Donchi cannot now ignore the terms of the purchase agreement and seek to hold Robdol and Steele liable. See *Woody's Steaks*, 261 Ga. App. at 817 (1).

4. Donchi further contends that the trial court erred in granting Steele's and Robdol's motion for summary judgment as to its unjust enrichment claim. We disagree.

"An unjust enrichment theory does not lie where there is an express contract." *Pryor v. CCEC, Inc.*[21] Here, none of the parties involved dispute the fact that a legal contract (the purchase agreement and addendums) was executed, which memorialized each party's obligations and benefits. Accordingly, the trial court did not err in granting summary judgment as to Donchi's unjust enrichment claim. See *Cox v. Athens Regional Med. Center.*[22]

*Judgment affirmed. Ruffin and Bernes, JJ., concur.*

DECIDED JANUARY 3, 2007.

*Hall & Hall, Clayton A. Hall, Buckley King, Ralph L. Taylor III,* for appellant.
*G. G. Kunes, Jr.,* for appellees.

---

[21] *Pryor v. CCEC, Inc.*, 257 Ga. App. 450, 452 (4) (571 SE2d 454) (2002).
[22] *Cox v. Athens Regional Med. Center*, 279 Ga. App. 586, 593 (3) (631 SE2d 792) (2006).