A07A1617. PIPKIN v. CORA BETT THOMAS REALTY COMPANY, LLC.
(650 SE2d 394)

BLACKBURN, Presiding Judge.

In this breach of contract action, plaintiff Tracy Pipkin appeals the grant of summary judgment in favor of defendant Cora Bett Thomas Realty Company, LLC ("CBT Realty"), arguing that the trial court misinterpreted the contract provisions in reaching its judgment. We agree with the trial court that CBT Realty owed no obligation to Pipkin to oversee renovations performed by a tenant of Pipkin, and we therefore affirm.

Summary judgment is only proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*[1]

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

So viewed, the evidence shows that in December 1999, Pipkin and his wife entered into a leasing/management agreement with CBT Realty, giving CBT Realty the exclusive right to lease to third parties and to manage on the Pipkins' behalf certain commercial property owned by the Pipkins in Savannah. In a special stipulation, the parties acknowledged that the property was untenantable and that any prospective tenant would have to agree to improve the property. The Pipkins also authorized CBT Realty, at the Pipkins' expense, to make and supervise repairs and alterations to the property and to hire and supervise contractors required for the operation and maintenance of the property.

Two months later in February 2000, a tenant executed an agreement with the Pipkins to lease a substantial portion of the property. In exchange for several months of free rent, the tenant agreed to be responsible for improving the property by covering the floors, repairing and finishing the walls, and installing other needed items. CBT Realty also signed this lease agreement to acknowledge that the Pipkins would be paying it a ten percent commission on all lease payments thereunder. The tenant then began improving the property as per the lease agreement.

A year later in January 2001, the Pipkins and CBT Realty entered into a superseding leasing/management agreement that basically repeated most of the same language as the 1999 agreement but made a few changes in some monetary amounts and stipulations. The Pipkins eventually became dissatisfied with the quality of the renovations performed by the tenant and sued CBT Realty under the theory that CBT Realty breached its alleged obligation to ensure the quality of such renovations when it did not diligently supervise and oversee such renovations. The Pipkins further sought to recover certain late fees that CBT Realty had received from the tenant. CBT Realty moved for summary judgment on both claims, arguing that the plain language of the contracts (i) did not obligate CBT Realty to supervise the tenant's renovation efforts and (ii) specified that CBT Realty was to retain the late fees. The trial court granted the motion, giving rise to this appeal by Mr. Pipkin (his wife did not join in the appeal).

1. First, we note that CBT Realty moved this Court to dismiss this appeal on the ground that a misnomer in the notice of appeal incorrectly identified CBT Realty as "Cora Bett Thomas Property Management Company, LLC." Pipkin immediately amended the notice to correct his mistake when such was brought to his attention.

As such a cured nomenclature problem is not grounds for dismissal, see *King Cotton, Ltd. v. Powers*,[2] we deny the motion to dismiss the appeal.

2. Pipkin argues that the trial court erred in holding that under the contracts, CBT Realty was not obligated to supervise and oversee the tenant's repair and renovation efforts. He points to the language in both leasing/management agreements that authorizes CBT Realty to supervise repairs and alterations to the property.

The cardinal rule of contract construction is to ascertain the intention of the parties, which initially is a question of law for the court. *Mountain Aire Realty v. Birdie White Enterprises.*[3] "Where contract language is unambiguous, no construction is necessary and the court must simply enforce the contract according to its clear terms. Contract language is unambiguous if it is capable of only one reasonable interpretation." (Footnote omitted.) *Caswell v. Anderson.*[4]

The relevant portions of the 1999 and 2001 leasing/management contracts (which have basically the same language) read as follows:

3. *Broker's Authority.* The Owner hereby gives the Broker the following authority and powers and agrees to assume the expenses in connection with:

A. To exclusively advertise the Property for rental and to display "for rent" signs thereon; to sign, renew, and cancel leases for the Property; to collect rents due or to become due and give receipts therefor; to terminate tenancies and to sign and serve in the name of the Owner such notices as are appropriate; to institute and prosecute actions; to evict tenants and to recover possession of the Property; to sue in the name of the Owner and recover rents and other sums due; and when expedient, to settle, compromise, and release such actions or lawsuits or reinstate such tenancies.

B. To make or cause to be made and supervise repairs and alterations, and to do decorating on the Property; to purchase supplies and pay bills therefor; the Broker agrees to secure the prior approval of the Owner on all expenditures in excess of $200.00 [$300.00 in 1999 Agreement] for any one item, except monthly or recurring operating charges and/or emergency repairs in excess of the maximum, if in the

---

[2] *King Cotton, Ltd. v. Powers*, 190 Ga. App. 845, 846 (1) (380 SE2d 481) (1989).
[3] *Mountain Aire Realty v. Birdie White Enterprises*, 265 Ga. App. 366, 368 (593 SE2d 900) (2004).
[4] *Caswell v. Anderson*, 241 Ga. App. 703 (527 SE2d 582) (2000).

opinion of the Broker such repairs are necessary to protect the Property from damage or to maintain services to the tenants as called for in their leases.

C. To hire, discharge and supervise all contractors and/or employees required for the operation and maintenance of the Property. . . .

D. To make contracts for [utilities]. . . .

E. To contract with others, including affiliates of broker or companies owned by broker, to perform services including, but not limited to, repairs, maintenance . . . , legal fees and court costs. . . . The Owner is hereby aware that Broker may deduct these expenses from the monies coming to Broker that are due to the Owner.

F. To institute and prosecute legal actions and proceedings in Owner's name and behalf to terminate leases for cause, to remove tenants from Property. . . .

\* \* \*

7. *Emergency Repairs.* Broker is authorized to make such emergency repairs to the Property as Broker reasonably believes to be necessary to protect the Property from damage or to maintain services to a tenant for which a lease provides. . . .

\* \* \*

SPECIAL STIPULATIONS: The following Special Stipulations, if conflicting with any preceding paragraph, shall control.

\* \* \*

[1999 Agreement] 2. [T]he Owner and Broker acknowledge that the property is currently untenantable and any tenant wishing to occupy the property will have to agree to improve it in accordance with applicable building codes and upon written approval of the Owner as to improvements plans.

[2001 Agreement] 3. Paragraph 3G, Inspections: At its sole discretion, Broker will make best efforts to conduct inspections of leased property in order to protect the property from damages. However, in no event will any damage to the property committed by Tenant or damage to the property that is occasioned from any cause whatsoever be deemed to be the responsibility of Broker.

The contract language here is capable of only one reasonable interpretation. Both leasing/management agreements only *authorize* CBT Realty to supervise repairs and alterations; neither, however, *obligates* CBT Realty to do so. Thus, CBT Realty *at its option* had the right to repair or to supervise contracted-for repairs and alterations; it did not undertake any obligation to the Pipkins to do so. The other subparagraphs in this same section similarly *authorize* CBT Realty to advertise the property, to institute legal actions on behalf of the Pipkins, and to make contracts for utilities at the site. No language, however, *requires* CBT Realty to advertise, to institute legal actions, or to enter utility contracts. Rather, this section of the contract, which is tellingly entitled "Broker's Authority," is plainly a mechanism designed to grant certain powers and authority to CBT Realty to be exercised as it sees fit; it is not a provision committing CBT Realty to engage in these actions. Indeed, in light of the express stipulation in the 1999 agreement that the property was untenantable and required improvements *by the tenant*, neither this provision nor any other provision of the agreement purported to obligate CBT Realty to perform such repairs or to supervise the tenant's renovation efforts; in fact, the special stipulation in the 2001 agreement expressly exonerated CBT Realty from any liability for damages to the property caused by the tenant. Finally, this interpretation is entirely consistent with the 2000 lease executed by the tenant, by the Pipkins, and by CBT Realty, which provided that the tenant bore responsibility for improving the premises, with no reference to any supervisory responsibilities owed by CBT Realty.

Accordingly, the trial court did not err in holding that nothing in the relevant agreements obligated CBT Realty to supervise the tenant's repairs and renovations and in therefore entering summary judgment in CBT Realty's favor on this claim.

3. Similarly, the language of both leasing/management agreements provides plainly that late fees collected by CBT Realty were for CBT Realty's "own account" and were to be deposited into an account for CBT Realty's "own behalf." Pipkin's argument that such funds were to be forwarded to him and his wife has no basis in the

agreements and in fact contravenes the language of the agreements. The trial court did not err in granting CBT Realty summary judgment on this claim also.

*Judgment affirmed. Ruffin and Bernes, JJ., concur.*

DECIDED JULY 23, 2007.

*John E. Pirkle,* for appellant.
*Hunter, Maclean, Exley & Dunn, Arnold C. Young, Jessica L. McClellan, Ronald H. Cohen,* for appellee.