A09A2273. STEFANO ARTS v. SUI et al.
(690 SE2d 197)

BLACKBURN, Presiding Judge.

In this civil action, Stefano Arts (a company) sued Dr. Hongjin Sui and his company, Dalian Medical University Plastination Company, Ltd. ("DMUP") for breach of contract and tortious interference with business and contractual relations. Following a grant of summary judgment in favor of Dr. Sui and DMUP on all claims, Stefano Arts appeals, contending that genuine issues of material fact existed as to whether Dr. Sui and DMUP breached an agreement between the parties and whether they interfered with Stefano Arts's business and contractual relations. For the reasons set forth below, we affirm.

Summary judgment is only proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c); *Britt v. Kelly & Picerne, Inc.*[1] "On appeal from the grant or denial of a motion for summary

---

[1] *Britt v. Kelly & Picerne, Inc.*, 258 Ga. App. 843, 843 (575 SE2d 732) (2002).

judgment, we review the evidence de novo, and all reasonable conclusions and inferences drawn from the evidence are construed in the light most favorable to the nonmovant." (Punctuation omitted.) *McCall v. Couture.*[2]

So construed, the record shows that Dr. Sui is a citizen of the People's Republic of China, a professor of human anatomy at Dalian Medical University in Dalian, Liaoning, China, and the president of Dalian Medical University Plastination Company. DMUP's primary business is the preservation and supply of human cadavers for use in museum-quality human anatomy touring exhibitions (plastination exhibitions) throughout the world, such as those used in "Bodies . . . The Exhibition"[3] and "Body Worlds."[4] Stefano Arts is a South Korean company engaged primarily in the business of facilitating and promoting touring exhibitions. In 2003, Dr. Sui met with Thomas Kwon, a representative of Stefano Arts, to discuss collaborating on plastination exhibitions in South Korea. Thereafter, DMUP and Stefano Arts collaborated to open successful plastination exhibitions in Daejeon, Daegu, and Seoul, South Korea.

In October 2003, Kwon met with John Norman, who was the owner of a company called Arts & Exhibitions International, to discuss starting a tour of Dr. Sui's and DMUP's plastination exhibitions in the United States. Shortly thereafter, Norman set up a new company called Exhibitions International ("EI") for the purpose of facilitating the touring of DMUP's plastination exhibitions in the United States. On January 30, 2004, EI and DMUP entered into a contract that was referred to as the "Exhibition Agreement." Under that contract, DMUP granted EI the exclusive right to establish touring exhibitions of DMUP's plastination specimens in the United States and further agreed that it would assist EI in doing so. In return, EI agreed to pay DMUP $500,000, plus 10 percent of gross ticket revenues from the exhibitions. In addition, the Exhibition Agreement provided that it "may be terminated[ ] upon the agreement of the Parties."

On that same day, EI and Stefano Arts entered into a contract referred to as the "Stefano Agreement." Pursuant to that contract, EI agreed to pay Stefano Arts $100,000 annually, plus 10 percent of the profits earned from the touring exhibitions, for Stefano Arts's consulting services rendered in connection with the exhibitions. Additionally, Stefano Arts agreed to provide EI with the display equipment that Stefano Arts was using for one of DMUP's plastination exhibitions in South Korea once that exhibition closed. Similar

---

[2] *McCall v. Couture*, 293 Ga. App. 305, 305 (666 SE2d 637) (2008).

[3] See http://www.bodiestheexhibition.com/.

[4] See http://www.bodyworlds.com/en.html.

to the Exhibition Agreement, the Stefano Agreement provided that it "may be terminated[ ] upon the agreement of the Parties." Additionally, the Stefano Agreement further provided that it may be terminated "upon the termination of the Exhibition Agreement[.]"

Later that same year, Premier Exhibitions, which was another American company in the business of facilitating and promoting touring exhibitions, also contacted Dr. Sui to discuss licensing DMUP's plastination exhibitions for touring. In light of his company's agreement with EI, Dr. Sui informed Premier that he could not enter into any contract to license touring plastination exhibitions in the United States. Instead, Premier and DMUP entered into agreements to conduct such exhibitions in other parts of the world, including Europe and South America, which were not prohibited by DMUP's agreement with EI.

After the execution of the Exhibition Agreement, EI was unable to open any touring plastination exhibitions in the United States. Fearing that Premier was about to acquire EI from John Norman and that such an acquisition would end its business relationship with EI, on March 25, 2005, Stefano Arts requested a meeting with Dr. Sui, who was in South Korea to view one of DMUP's exhibitions. At that meeting, a representative of Stefano Arts drafted a document that became known as the "Protection Agreement." That agreement provided that if the Stefano Agreement between EI and Stefano Arts terminated, DMUP would continue to pay Stefano Arts $100,000 annually, plus 10 percent of the exhibitions' profits, for five years pursuant to the terms of the Stefano Agreement. In return, Stefano Arts promised that it "shall devote to make a successful tour and cooperate with DMUP against competitor during the co-business." At the conclusion of the meeting, Dr. Sui and the Stefano Arts representative signed the agreement.

In late March or early April 2005, Premier bought EI and thus acquired EI's rights and responsibilities under both the Exhibition Agreement and the Stefano Agreement. Later that year, Premier opened a plastination exhibition in New York City, using DMUP's plastination specimens, and on October 19, 2005, Premier paid Stefano Arts $100,000 pursuant to the terms of the Stefano Agreement. In April 2006, Premier and DMUP mutually agreed to terminate the Exhibition Agreement, which also resulted in the termination of the Stefano Agreement. Shortly thereafter, Premier and DMUP entered into a new agreement for the touring of DMUP's plastination exhibitions, which did not involve Stefano Arts.

Following the termination of the Stefano Agreement, Stefano Arts demanded that Premier pay it the second annual fee of $100,000, plus 10 percent of the profits from the New York exhibition, and also demanded that DMUP pay it in accordance with the

terms of the Protection Agreement. When both companies refused, Stefano Arts filed a complaint,[5] alleging breach of contract claims against both companies and Dr. Sui and alleging a tortious interference with business and contractual relations claim against Dr. Sui and DMUP. Dr. Sui and DMUP filed a motion for summary judgment as to both of Stefano Arts's claims against them, which the trial court granted after a hearing. This appeal followed.

1. Stefano Arts contends that the trial court erred in granting summary judgment in favor of Dr. Sui and DMUP, arguing that genuine issues of material fact exist as to whether they breached the Protection Agreement. Because we find that the Protection Agreement was too vague and lacked consideration, we disagree.

"Construction of a written contract is a question of law for the trial court based on the intent of the parties as set forth in the contract, which question we review de novo." *Donchi, Inc. v. Robdol, LLC.*[6] "If the language of a contract is clear and unambiguous, we enforce those terms and need not look elsewhere to assist in the contract's interpretation." *Mariner Healthcare v. Foster.*[7] "Contract language is unambiguous if it is capable of only one reasonable interpretation." (Punctuation omitted.) *Pipkin v. Cora Bett Thomas Realty Co.*[8]

In this matter, Dr. Sui signed the Protection Agreement, in which he promised that DMUP would pay Stefano Arts pursuant to the terms of its Stefano Agreement that it had executed with EI in the event of that agreement's termination. However, Stefano Arts's promise to "devote to make a successful tour and cooperate with DMUP against competitor during the co-business," is too vague, indefinite, and uncertain to enforce under Georgia law. The type or manner of assistance is undefined and fails to specify what Stefano Arts is supposed to do. See *Albee v. Krasnoff*;[9] *Jackson v. Williams*;[10] *Peachtree Med. Bldg. v. Keel*[11] ("[t]he requirement of certainty extends not only to subject matter and purpose of the contract, but also to the parties, consideration, and even the time and place of performance where these are essential"). An "agreement must be expressed plainly and explicitly enough to show what the parties agree upon; a contract cannot be enforced if its terms are incomplete

---

[5] Stefano Arts eventually settled its claim against Premier.

[6] *Donchi, Inc. v. Robdol, LLC*, 283 Ga. App. 161, 163-164 (1) (a) (640 SE2d 719) (2007).

[7] *Mariner Healthcare v. Foster*, 280 Ga. App. 406, 409-410 (2) (634 SE2d 162) (2006).

[8] *Pipkin v. Cora Bett Thomas Realty Co.*, 286 Ga. App. 743, 745 (2) (650 SE2d 394) (2007).

[9] *Albee v. Krasnoff*, 255 Ga. App. 738, 742-743 (4) (566 SE2d 455) (2002).

[10] *Jackson v. Williams*, 209 Ga. App. 640, 642 (1) (434 SE2d 98) (1993).

[11] *Peachtree Med. Bldg. v. Keel*, 107 Ga. App. 438, 441 (1) (130 SE2d 530) (1963).

or incomprehensible." *Drug Line v. Sero-Immuno Diagnostics*.[12]

Moreover, even if we were to construe the language in the agreement, as Stefano Arts argues, to mean that Stefano Arts would use its influence and expertise against competitors of DMUP's exhibitions in South Korea, the agreement is still unenforceable. For any agreement to be enforceable, it must be supported by consideration. See OCGA § 13-3-1. Here, there is no evidence that Stefano Arts paid Dr. Sui or DMUP in return for their promise to "protect" Stefano Arts against the termination of the Stefano Agreement. Furthermore, given that Stefano Arts had collaborated with DMUP on the Korean exhibitions, it was already obligated to assist DMUP against competitors with respect to those exhibitions. "An agreement on the part of one to do what he is already legally bound to do is not a sufficient consideration for the promise of another." (Punctuation omitted.) *Lamb v. Fulton-DeKalb Hosp. Auth.*[13] Thus, while DMUP's promise to Stefano Arts in the Protection Agreement constituted adequate consideration for a contract, Stefano Arts's promise to undertake an obligation it already owed was not. See id. at 534 (2); *Glisson v. Global Security Svcs.*[14] (employer's promise of continued employment if employee signed noncompete covenant when employer was already so obligated under an employment contract was not consideration). Accordingly, the trial court did not err in granting summary judgment to Dr. Sui and DMUP as to Stefano Arts's breach of contract claim.

2. Stefano Arts contends that the trial court erred in granting summary judgment in favor of Dr. Sui and DMUP, arguing that genuine issues of material fact existed as to whether they tortiously interfered with Stefano Arts's business and contractual relations with Premier. We disagree.

Under Georgia law,

[t]ortious interference claims, whether asserting interference with contractual relations, business relations, or potential business relations, share certain common essential elements: (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff;

---

[12] *Drug Line v. Sero-Immuno Diagnostics*, 217 Ga. App. 530, 531 (458 SE2d 170) (1995).

[13] *Lamb v. Fulton-DeKalb Hosp. Auth.*, 297 Ga. App. 529, 533-534 (2) (677 SE2d 328) (2009).

[14] *Glisson v. Global Security Svcs.*, 287 Ga. App. 640, 641-642 (653 SE2d 85) (2007).

and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

(Punctuation omitted.) *Kirkland v. Tamplin.*[15]

Stefano Arts claims that Dr. Sui and DMUP interfered with its business and contractual relations with Premier by persuading Premier to terminate the Stefano Agreement. However, Stefano Arts cannot show the first essential element that Dr. Sui or DMUP acted improperly and without privilege because it must show more than that the defendant simply persuaded a person to break a contract. *Sommers Co. v. Moore.*[16]

> Indeed, the plaintiff must adduce evidence of improper action or wrongful conduct, which our courts have defined as constituting conduct wrongful in itself; thus, improper conduct means wrongful action that generally involves predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions.

(Citation and punctuation omitted.) *Kirkland*, supra, 285 Ga. App. at 244 (1) (b). Here, at most, Stefano Arts can only show that Dr. Sui and DMUP may have persuaded Premier to terminate the Stefano Agreement, which alone is insufficient to show tortious interference. See id.

Furthermore,

> *[t]o be liable for tortious interference with business relations, one must be a stranger to the business relationship giving rise to and underpinning the contract.* But, where a defendant had a legitimate interest in either the contract or a party to the contract, he is not a stranger to the contract itself or to the business relationship giving rise thereto and underpinning the contract. Nor does the fact that a defendant did not sign the contract preclude a finding that he was no stranger to the contract. In sum, all parties to an interwoven contractual arrangement are not liable for tortious interference with any of the contracts or business relationships. . . . For this reason, proof that the defendant was no stranger to the business relations at issue is fatal to the plaintiff's claim of tortious interference with business relations.

---

[15] *Kirkland v. Tamplin*, 285 Ga. App. 241, 243 (1) (645 SE2d 653) (2007).
[16] *Sommers Co. v. Moore*, 275 Ga. App. 604, 605-606 (621 SE2d 789) (2005).

(Punctuation omitted; emphasis in original.) *Benefit Support, Inc. v. Hall County*.[17] See *Cox v. City of Atlanta*;[18] *Disaster Svcs. v. ERC Partnership*.[19]

Here, Dr. Sui and DMUP were not strangers to the business relationship between Premier (following its acquisition of EI) and Stefano Arts. Indeed they were intimately involved in that relationship, as their relationship and agreement with Premier, which involved supplying the plastination specimens for the exhibitions, was the basis for the business and contractual relationship between Premier and Stefano Arts. See *Kirkland*, supra, 285 Ga. App. at 245 (1) (b) ("[w]here the defendant has 'a bona fide economic interest in the contract or relationship with one of the parties to the contract,' he is not a stranger to the contract and acts with privilege with regard to that contract"); *Benefit Support, Inc.*, supra, 281 Ga. App. at 830 (3). Accordingly, the trial court did not err in granting summary judgment to Dr. Sui and DMUP as to Stefano Arts's tortious interference with business and contractual relations claim.

*Judgment affirmed. Adams and Doyle, JJ., concur.*

DECIDED JANUARY 6, 2010.

*Miller & Martin, Ryan A. Kurtz, Michael P. Kohler*, for appellant. *Pendergast & Jones, Ezra B. Jones III*, for appellees.

---

[17] *Benefit Support, Inc. v. Hall County*, 281 Ga. App. 825, 830 (3) (637 SE2d 763) (2006).

[18] *Cox v. City of Atlanta*, 266 Ga. App. 329, 332-333 (1) (596 SE2d 785) (2004).

[19] *Disaster Svcs. v. ERC Partnership*, 228 Ga. App. 739, 741 (492 SE2d 526) (1997).