**SECOND DIVISION**
**DOYLE, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 5, 2013**

# In the Court of Appeals of Georgia

A13A1199. TILLMAN v. VININGS BANK.                    DO-006

DOYLE, Presiding Judge.

Anne S. Tillman filed a complaint for injunctive relief against Vinings Bank seeking to prevent foreclosure of Tillman's Georgia home, which secured a construction loan on a Florida home. The Bank filed a motion to enforce a settlement agreement that would resolve litigation the Bank initiated in Florida as well as the foreclosure on Tillman's Georgia home. The trial court granted the motion to enforce the settlement agreement, and Tillman now appeals. For the reasons that follow, we affirm.

"On appeal from a trial court's order on a motion to enforce a settlement agreement, we apply a de novo standard of review, viewing the evidence in a light

most favorable to the nonmoving party."[1] So viewed, the record shows that in 2008, Tillman executed a $1,920,000 note in favor of the Bank, guaranteed by her now ex-husband, Arnold Tillman. The purpose of the loan was to finance construction of a second home for the Tillmans in Florida, which property would serve as collateral and security. The original note matured and was renewed; the last renewal on October 2010.

In the meantime, the marriage deteriorated, the couple divorced in late 2009, and Arnold filed for bankruptcy in 2010 and received a discharge. Due to the loss of the guarantor on the note, the Bank considered itself insecure, and Anne agreed to pledge her Georgia home as additional collateral. The note matured according to its terms in April 2011, and the Tillmans failed to pay the balance due, so the Bank filed an action in Florida on the note and for foreclosure on the Florida property. Tillman answered and filed a counterclaim.

Concurrent with the Florida litigation, the Bank began foreclosure proceedings under the security deed to the Georgia property, and Tillman filed the instant suit in Georgia seeking an injunction to stop the non-judicial foreclosure. In December 2011,

---

[1] (Punctuation omitted.) *Triple Eagle Assocs. v. PBK, Inc.*, 307 Ga. App. 17 (704 SE2d 189) (2010).

the Superior Court of Cobb County, following a hearing, entered an order granting the injunction. The Bank filed a timely notice of appeal to the Supreme Court, challenging the award of injunctive relief.

During the pendency of the Supreme Court appeal, the Florida litigation continued. The Bank moved for summary judgment, and a hearing was scheduled for April 10, 2012. At the hearing, attorneys for the parties continued to explore settlement of both the Florida and Georgia litigation, with negotiations culminating late that afternoon when written documents were created and revised. One document, with revisions initialed by Tillman, was signed by her but not the Bank ("Exhibit A"). Another document was signed by both parties ("Exhibit B"), but revisions apparently continued. Tillman's attorney needed to leave to attend a Miami Heat basketball game, so the negotiations were not finally memorialized that afternoon, and the hearing was re-scheduled for the next morning.

When counsel appeared for the hearing, they could not develop a mutually signed agreement before the hearing was called, so the parties recorded a statement through the court reporter purporting to, according to Tillman's attorney, "memorialize a settlement agreement that occurred between the parties." In the transcript, Tillman's counsel explained that Exhibit A, signed by Tillman alone,

contained the terms of the agreement, with a modification clarifying that a certain vendor default provision would not apply to the Georgia mortgage. Both versions included a provision requiring the parties to refinance or modify the security deed on the Georgia property to reflect the following terms: a promissory note for $175,000 with interest accruing at 4% annually, payments calculated on a 30-year amortization schedule, payments deferred for 6 months after execution, a 10-year term with a balloon payment at maturity, with each party responsible for a specified portion of taxes and insurance.

When the Bank provided loan documents in May 2012 to restructure the debt in accordance with the agreement, Tillman refused to execute the documents because they referenced a business loan instead of converting it to a residential loan. The Bank responded that the nature of the loan reflected its use as an investment property and not her personal home, but the status would not affect Tillman (other than saving her paperwork), and the loan would remain true to the basic terms established in the settlement agreement.

On June 20, 2012, in accordance with the settlement agreement, the Bank moved to withdraw its appeal in the Supreme Court of Georgia, and Tillman filed a

4

same-day response noting her disagreement that the Florida litigation had been resolved. The Supreme Court granted the motion to withdraw the appeal.

In July 2012, the Bank and Tillman filed a joint stipulation in the Florida court that the Florida case, including a counterclaim brought by Tillman, be dismissed with prejudice because "the parties [had] reached an amicable settlement." The Bank also continued to perform under the settlement agreement by providing Tillman with a letter for credit reporting purposes stating that Tillman's outstanding debt to the Bank had been resolved and by paying property taxes and satisfying certain liens on the Florida property. According to the Bank, Tillman also began performing the settlement agreement by executing a deed in lieu of foreclosure on the Florida property, but the parties do not identify this document in the record.

Later in July, due to Tillman's reluctance to refinance or modify the security deed on the Georgia property according to the settlement agreement, the Bank filed an amendment to its counterclaim to add a claim for breach of the settlement agreement. Tillman opposed the motion, and after a hearing, the trial court granted it, giving rise to this appeal.

1. Tillman contends that the trial court erred by enforcing the settlement agreement because there was no meeting of the minds on definite terms. We disagree.

Compromises of doubtful rights are upheld by general policy, as tending to prevent litigation, in all enlightened systems of jurisprudence. In considering the enforceability of an alleged settlement agreement, however, a trial court is obviously limited to those terms upon which the parties themselves have mutually agreed. Absent such mutual agreement, there is no enforceable contract as between the parties.[2]

Therefore, "settlement agreements must meet the same requirements of formation and enforceability as other contracts,"[3] including mutual assent to the definite terms.[4]

[When] determining if parties had the mutual assent or meeting of the minds necessary to reach agreement, courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent. In making that determination, the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement, and courts are free to consider such extrinsic evidence.[5]

---

[2] (Citation and punctuation omitted.) *Herring v. Dunning*, 213 Ga. App. 695, 696-697 (446 SE2d 199) (1994).

[3] *Sherman v. Dickey*, 322 Ga. App. 228, 231 (1) (744 SE2d 408) (2013).

[4] See OCGA § 13-3-1.

[5] (Citation and punctuation omitted.) *Frickey v. Jones*, 280 Ga. 573, 575 (630 SE2d 374) (2006).

6

Here, it is undisputed that there were settlement negotiations that resulted in two written versions of an agreement. Each version was signed by Tillman, and in the transcribed conference following the negotiations, Tillman's counsel explained which version governed the parties' agreement, specifically outlining the sole discrepancy. It is undisputed that both documents contained the main disputed term, i.e., the modification of the security deed on Tillman's Georgia home, which is essentially the only major term remaining to be performed by either party. Likewise, both versions provide that the "[p]arties hereby agree to execute all documents necessary to resolve this matter and shall cooperate to effectuate this settlement in a timely manner." Under these circumstances, a reasonable person in the Bank's position would ascribe to Tillman her assent to the terms described by her counsel for the express purpose of clarifying and memorializing the written settlement agreements she signed.[6] Furthermore, the essential terms of the agreement, i.e., principal amount of debt, interest rate, amortization and payment schedule, identification of property, and tax

---

[6] See OCGA § 15-19-5 ("Attorneys have authority to bind their clients in any action or proceeding by any agreement in relation to the cause, made in writing. . . ."); Uniform Superior Court Rule 4.12 ("Attorneys of record have apparent authority to enter into agreements on behalf of their clients in civil actions. Oral agreements, if established, are enforceable.").

7

liability, were sufficiently definite to enforce the agreement.[7] That the parties agreed to execute documents to effectuate the agreement did not render it unenforceable.[8] Accordingly, we discern no error in the trial court's finding of mutual assent to the terms as described in the transcribed conference and written agreement.

2. Tillman also argues that the trial court erred by denying her motion for summary judgment on the Bank's counterclaim for breach of the settlement contract because it reached the substance of the Bank's claims in the Florida litigation, which was dismissed with prejudice. But the claim in this case is one for breach of a contract that arose independently of the Florida foreclosure proceeding. Thus, the contract claim was not adjudicated in the Florida court and is not barred by res judicata in the instant suit.[9]

---

[7] Compare *Drug Line v. Sero-Immuno Diagnostics*, 217 Ga. App. 530 (458 SE2d 170) (1995) (agreement held unenforceable because the parties agreed to execute another undescribed agreement containing further unspecified details).

[8] See, e.g., *Goobich v. Waters*, 283 Ga. App. 53, 56-57 (1) (640 SE2d 606) (2006) ("The existence of [a] future obligation to execute [customary but undrafted] closing documents . . . does not mean that the parties did not intend to be bound by the essential terms already agreed to."); *Neely Dev. Corp. v. Serv. First Investments, Inc.*, 261 Ga. App. 253, 257 (1) (c) (582 SE2d 200) (2003) (enforcing a real estate sales contract requiring the execution of an undrafted restrictive covenant).

[9] See *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 866 (1) (463 SE2d 5) (1995) ("Three prerequisites must be satisfied before res judicata applies – (1)

In the same enumeration, Tillman also argues that the Bank's amended counterclaim – asserting the breach of settlement agreement claim – was improper because the Bank failed to seek leave to file the counterclaim. But the record shows that the Bank did thereafter file a petition for leave to amend its counterclaim. Granting such petitions are within the discretion of the trial court, and they are to be treated liberally if no prejudice would result.[10] Tillman fully responded to the counterclaim, and she fails to show any prejudice arising from the trial court's consideration of the Bank's amendment. Accordingly, this argument presents no basis for reversal.[11]

3. In light of the holdings herein, and as Tillman concedes, her third enumeration is moot.

*Judgment affirmed. Miller and Ray, JJ., concur.*

---

identity of the cause of action, (2) identity of the parties or their privies, and (3) previous adjudication on the merits by a court of competent jurisdiction.").

[10] See *Martin & Jones Produce v. Lundy*, 197 Ga. App. 38, 39 (2) (397 SE2d 461) (1990).

[11] See id.