**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 9, 2022**

# In the Court of Appeals of Georgia

A22A0069. PARNELL et al. v. SHERMAN & HEMSTREET, INC.

DILLARD, Presiding Judge.

Michael Parnell appeals the trial court's grant of temporary injunctive relief to his former employer, Sherman & Hemstreet, Inc. ("S&H"), which prohibited him from violating certain non-competition provisions in his employment agreement. In doing so, Parnell argues that the trial court abused its discretion because (1) S&H's complaint and motion for a temporary injunction were not sufficiently verified; and (2) S&H failed to allege or prove all of the prerequisites necessary to obtain a temporary injunction.

In a consolidated brief with Parnell, RE/MAX River Realty Company, Lisa Pops, and Michael Pops (the "RE/MAX parties")[1] appeal the trial court's denial of their motion to dismiss Count 2 of the complaint (*i.e.*, a claim against them for tortious interference with business relationships) or, alternatively, for a judgment on the pleadings—which they contend was converted to a motion for summary judgment because the court considered matters outside the pleadings. Specifically, the RE/MAX parties argue the employment contract at issue was void, and even if that were not the case, S&H's claim against them for tortious interference with its business relationships fails because S&H did not allege and prove the elements required to establish such a claim. For the reasons set forth *infra*, we reverse in part, vacate in part, and remand the case for further proceedings consistent with this opinion.

---

[1] For the sake of brevity, Parnell and the RE/MAX parties will sometimes be referred to collectively as "the appellants."

The record shows that,[2] under the terms of an independent contractor agreement, Parnell worked for S&H as a real estate agent from November 2016 until May 12, 2020, when the agreement was terminated.[3] The agreement included confidentiality, non-solicitation, and non-competition clauses. Specifically, Section 17 (a) of the agreement—*i.e.*, the confidentiality clause—provides:

> [Parnell] acknowledges and agrees that the information as to the business procedures and methods, including the name of clients and customers, their buying practices[,] and the products sold to particular clients of [S&H] are valuable trade secrets of [S&H]. Parnell expressly covenants and agrees that, during the term of this agreement and for a [period] of two years after the termination of this agreement for any reason (whether or not with cause), [he] will not communicate or

---

[2] To the extent it relates to the RE/MAX parties' motion to dismiss Count 2 of the complaint, we glean the underlying factual background from S&H's complaint. Indeed, we conduct a *de novo* review of a trial court's ruling on a motion to dismiss, and in doing so "construe the pleadings in the light most favorable to the plaintiff with all doubts resolved in [the plaintiff's] favor." *Zephaniah v. Ga. Clinic, P.C.*, 350 Ga. App. 408, 410 (829 SE2d 448) (2019) (punctuation and footnote omitted). And while the RE/MAX parties contend their motion was converted to one for summary judgment, we reject that argument in Division 3 (a) *infra.*

[3] While S&H alleged in its complaint and motion for injunctive relief that the agreement was amended on February 20, 2019, it does not appear that any of the relevant provisions were altered. Indeed, the parties and the trial court both rely on the language used in the original version of the agreement, which was attached to S&H's complaint; and thus, so do we.

3

divulge, or use any confidential information concerning the business of [S&H] without express consent of [S&H].

This provision also included a detailed definition for what constitutes "confidential information" for purposes of the agreement.

Next, Section 17 (b) of the agreement—*i.e.*, the non-solicitation clause—provides that, subject to the time limitations applicable to the previous clause,

[Parnell] shall not . . . on his . . . behalf or on behalf of any person, firm, partnership, association, corporation[,] or business organization, entity, enterprise other than [S&H], solicit, contact, or call upon any customer of [S&H] or any representative of any customer or prospective customer of [S&H] with a [view] to facilitating the sale, rental, lease[,] or management of real property to or on behalf of said customer. Provided, that these restrictions shall apply only to those customers or prospects of [S&H], with respect to whom [Parnell] had Material Contact with such customer or prospect or representative of such customers or prospects of [S&H] during the period of Twelve (12) months immediately preceding cessation of this agreement. A "Material Contact" as that term is used herein, exits between [Parnell] and each customer or potential customer of [S&H] (or their representative) if interaction took place between them in an effort to further a business relationship with [S&H].

Lastly, Section 17 (c) of the agreement—*i.e.*, the non-competition clause—provides, in relevant part, that

> [Parnell] expressly covenants and agrees that [he] will not, during the term of [his] employment with [S&H] and for a period of one (1) year after the termination of [his] services, for [himself] individually or on behalf of any other person, partnership, association, corporation, be employed by, provide services for, or receive compensation from any business which provides real estate sales and rental services which are the same or similar to that of [S&H], within the area known as the Central Savannah River Area . . . .

The non-competition clause then goes on to list the Georgia counties comprising the so-called Central Savannah River Area and provides that, if Parnell violates this provision, he "shall immediately and prior to providing said competing services, pay to [S&H] a lump-sum cash payment in the amount of ten[ ] thousand dollars ($10,000)."

According to the complaint, Parnell actively engaged in residential and commercial real estate sales in the Central Savannah River Area while employed by S&H, and immediately following the termination of the employment agreement, the RE/MAX parties hired "Parnell to perform the same or substantially the same[ ] services as [he] performed at [S&H] and in the same geographic area." Furthermore,

5

without S&H's prior consent, "Parnell communicated with and solicited [S&H's] clients to cancel their contract(s) with [S&H], and sign new contract(s) with RE/MAX." S&H further contended that "Parnell communicated and solicited [S&H's] clients on behalf of RE/MAX with whom he had material contacts on behalf of [S&H] within the twelve months preceding the termination of [the] agreement." And during this time, S&H repeatedly warned Parnell and the RE/MAX parties that Parnell was in violation of the employment agreement and provided them with a copy of same, but Parnell refused S&H's demand that he cease and desist the prohibited conduct.

Based on the foregoing, S&H filed a two-count complaint, asserting a breach-of-contract claim against Parnell (Count 1) and a claim of tortious interference with contractual or business relationships against the RE/MAX parties (Count 2).[4] In

---

[4] Although Count 2 of the complaint is titled, "Tortious Interference with Contract[,]" it alleged, *inter alia*, that the RE/MAX parties acted purposefully and with malice to injure or discontinue S&H's "current business and business relationships with its clients/customers and/or prospective clients/customers." And on appeal, S&H describes its own claim as one for "tortious interference with contractual and business relations or potential relations." Thus, that is the only claim before this Court for consideration as to the RE/MAX parties.

addition, S&H filed a motion for an injunction and temporary restraining order,[5] requesting that the court prohibit the appellants from continuing to violate the employment agreement by calling upon, soliciting, and inducing its clients to move their business from S&H to RE/MAX. The RE/MAX parties responded, opposing the imposition of a temporary injunction and moving the court to dismiss Count 2 of the complaint or, alternatively, for a judgment on the pleadings.

Following a hearing on the matter, the trial court ultimately granted S&H's motion for a temporary injunction only as to Parnell. Specifically, the trial court, pending its further determination of the issues, prohibited Parnell from (1) communicating, divulging, or using S&H's confidential information; (2) soliciting, contacting, or calling upon S&H's customers or any representative of any of its customers or prospective customers with a view to facilitate the sale, rental, lease, or management of real property to or on behalf of said customer; and (3) providing services for, or receiving compensation from, any business which provides real estate

---

[5] Georgia caselaw and the parties' briefs refer to the injunction at issue interchangeably as temporary, preliminary, and interlocutory. *See Hampton Island Founders, LLC v. Liberty Cap., LLC*, 283 Ga. 289, 293 (1) (a) (658 SE2d 619) (2008) (referring to an injunction as "temporary or interlocutory"); *Smith v. Gwinnett Cty.*, 268 Ga. 179, 179 (486 SE2d 151) (1997) (referring to an injunction as "preliminary" as opposed to permanent). For the sake of consistency, we refer to the injunction at issue as being temporary in nature.

7

sales and rental services, which are the same or similar to that of S&H within the Central Savannah River Area. At the conclusion of its order, the trial court summarily denied the RE/MAX parties' motion to dismiss Count 2 of the complaint. This appeal follows.

1. As a preliminary matter, S&H asks this Court to remand this case to the trial court for completion of the record. Specifically, S&H contends that Parnell and the RE/MAX parties failed to satisfy their burden of ensuring the transcript of the relevant motions hearing was included in the record on appeal. We disagree that such a burden exists.

Georgia law specifies the procedure for "the inclusion of a transcript in an appellate record."[6] Specifically, under OCGA § 5-6-37, a notice of appeal "shall state whether or not any transcript of evidence and proceedings is to be transmitted as a part of the record on appeal." Thus, this provision leaves "the choice of whether to include a transcript in the appellate record to the appellant."[7] And if an appellant *desires* that a transcript be made part of the record on appeal, he "must say so in [his]

---

[6] *Hill v. Bd. of Regents of Univ. Sys. of Ga.*, 346 Ga. App. 830, 831 (816 SE2d 296) (2018).

[7] *Id.*

8

notice of appeal, have the transcript prepared at [his] own expense, and have it filed with the trial court within 30 days of the filing of the notice of appeal, unless [he] obtains an extension of time from the trial court."[8]

Here, Parnell and the RE/MAX parties' notice of appeal listed various portions of the trial court record to be omitted from the appellate record and then specifically noted, "[a] transcript of the November 6, 202[0] [motions hearing] will not be included in the record on appeal."[9] And under OCGA § 5-6-37, the appellants were not required to ensure this transcript was available to this Court. Instead, they merely

---

[8] *Id.* (emphasis supplied); *see* OCGA § 5-6-37 (providing, *inter alia*, that a notice of appeal "shall state whether *or not* any transcript of evidence and proceedings is to be transmitted as a part of the record on appeal." (emphasis supplied)); OCGA § 5-6-42 ("The party having the responsibility of filing the transcript shall cause it to be filed within 30 days after filing of the notice of appeal *or* designation *by appellee*, as the case may be, unless the time is extended as provided in Code Section 5-6-39." (emphasis supplied)); OCGA § 5-6-41 (c) ("Where an appeal is taken which draws in question the transcript of the evidence and proceedings, it shall be the duty of the appellant to have the transcript prepared at the appellant's expense."); OCGA § 5-6-39 (a) (1) ("Any judge of the trial court or any justice or judge of the appellate court to which the appeal is to be taken may, in his discretion, and without motion or notice to the other party, grant extensions of time for the filing of . . . the [n]otice of appeal . . . .").

[9] There is a typographical error in the notice of appeal. Specifically, it identifies the transcript of the November 6, "202" hearing as the one to be omitted from the record on appeal, but the record shows that the hearing occurred in 2020.

9

had to indicate *whether or not* the transcript was to be included in the appellate record, which they did.[10]

Even so, S&H contends that evidence necessary for the resolution of this appeal was presented at the relevant hearing and suggests such evidence was intentionally excluded by the appellants because it was unfavorable to them. But under OCGA § 5-6-42, if the appellant designates any matter to be omitted from the record on appeal as provided in Code Section 5-6-37, the *appellee* may—within 15 days of being served with the notice of appeal by appellant—"file a designation of record designating that all or part of the omitted matters be included in the record on appeal."[11] This, the appellee did not do.

Furthermore, there is no evidence S&H objected in the trial court to the exclusion of the hearing transcript on appeal or that the court ruled on the matter. And under this Court's rules, its failure to do so waived any objections relating to the

---

[10] *See supra* notes 7-8 & accompanying text.

[11] (Emphasis supplied).

filing of a transcript.[12] As a result, we decline to remand this case to the trial court for it to supplement the appellate record with the motions hearing transcript.

2. Next, Parnell argues the trial court abused its discretion in granting S&H's motion for a temporary injunction. But given the state of the record as it currently exists, we must vacate the trial court's ruling in this regard and remand the case for further proceedings consistent with this opinion.

It is well established that the purpose for granting temporary injunctions is "to preserve the status quo, as well as balance the conveniences of the parties, pending a final adjudication of the case."[13] And while such an injunction is "an extraordinary remedy, and the power to grant it must be prudently and cautiously exercised, the trial

---

[12] *See* Ct. App. R. 20 ("Appellee shall be deemed to have waived any failure of the appellant to comply with the provisions of the Appellate Practice Act relating to the filing of the transcript of the evidence and proceedings or transmittal of the record to this Court, unless objection thereto was made and ruled upon in the trial court before transmittal and the trial court's order is appealed as provided by law.").

[13] *Daneshgari v. Patriot Towing Servs., LLC*, 361 Ga. App. 541, 543 (864 SE2d 710) (2021) (punctuation omitted).

court is vested with broad discretion in making that decision."[14] With these guiding principles in mind, we turn to Parnell's specific claims of error.

(a) First, Parnell argues the trial court erred in granting S&H's motion for a temporary injunction because the complaint and motion requesting it were not adequately verified.

In this regard, the failure to file a verified complaint "can be amended and does not subject the injunction to dismissal if it was supported by evidence; [but] [an] unverified petition [requesting injunctive relief] must be supported by other satisfactory proofs, i.e., affidavit, deposition, or oral testimony."[15] Here, S&H failed to file any verification to support its complaint, but again, "[g]enerally, the failure to

---

[14] *W. Sky Fin., LLC v. State ex rel. Olens*, 300 Ga. 340, 352 (2) (b) (793 SE2d 357) (2016) (punctuation omitted); *see Daneshgari*, 361 Ga. App. at 543 (providing that the decision of whether to grant equitable relief—such as a temporary injunction—is "generally a matter within the sound discretion of the trial court, and the trial court's decision should be sustained on appeal when there has been no abuse of that discretion" (punctuation omitted)).

[15] *BEA Sys., Inc. v. WebMethods, Inc.*, 265 Ga. App. 503, 504 (595 SE2d 87) 2004); *see* OCGA § 9-10-110 ("Petitions for a restraining order, injunction, receiver, or other extraordinary equitable relief shall be verified positively by the petitioner or supported by other satisfactory proofs."); *Edwards v. Edwards*, 227 Ga. 307, 308 (1) (180 SE2d 358) (1971) (same); *Bracewell v. Cook*, 192 Ga. 678, 678 (2) (16 SE2d 432) (1941) ("The fact that a petition for injunction is not verified . . . does not as a matter of law demand its dismissal, but the petition may be retained in court and an injunction granted thereon, where 'other satisfactory proofs' are submitted.").

12

verify a complaint is an amendable defect, and a reasonable time is allowed for a defective pleading to be amended."[16] But unlike the complaint, S&H's motion for a temporary injunction included a verification, noting that the "Broker-President of [S&H], do[es] hereby swear and attest that the facts set forth in the above Verified Motion for [an] Injunction and Temporary Restraining Order are true and correct *to the best of [his] knowledge*."[17] And importantly, our Supreme Court has held that "[a] verification of a petition by a person to the effect 'that the allegations contained therein are true and correct to the best of his information and belief' is not a positive verification . . . ."[18]

---

[16] *Davis v. Emmis Pub. Corp.*, 244 Ga. App. 795, 798 (3) (536 SE2d 809) (2000); *see DRST Holdings, Ltd. v. Brown*, 290 Ga. 317, 317 (1) (720 SE2d 626) (2012) ("It is well settled that the failure to verify a pleading is an amendable defect." (punctuation omitted)).

[17] (Emphasis supplied).

[18] *Carter v. Hayes*, 214 Ga. 782, 782 (2) (107 SE2d 799) (1959); *Wright v. Wheatley*, 210 Ga. 35, 36 (2) (77 SE2d 435) (1953) (holding that a petition for injunctive relief was properly dismissed for lack of proper verification when it contained many allegations based upon the petitioners' "information and belief" and their attorney attempted to verify the petition with an affidavit that the facts alleged therein were true according to his "investigation, knowledge, information and belief"); *Grizzel v. Grizzel*, 188 Ga. 418, 422 (2) (3 SE2d 649) (1939) ("[A]n affidavit . . . is insufficient where it merely states that 'the allegations of fact set forth in the foregoing petition, where same is based upon affiant's knowledge, are true, and where based upon information, she believes to be true,' and the petition does not allege what

13

Regardless, the trial court's order did not address or acknowledge the appellants' argument below that S&H's complaint and motion were not sufficiently verified. At best, it implicitly rejected this argument without identifying the "satisfactory proofs" it believed rendered S&H's failure to positively verify its motion for injunctive relief unnecessary. To the contrary, the trial court stated—in ruling on the motion—that it considered only pleadings, responsive pleadings, and oral argument.[19] Suffice it to say, we are "a court of review, not of first view."[20] As a result, we must vacate the trial court's grant of temporary injunctive relief and remand

facts are 'based upon [her] knowledge,' and thus fails to completely or sufficiently segregate by positive verification which of the essential facts of the petition were and which were not within her own knowledge."); *Byrd v. Prudential Ins. Co.*, 182 Ga. 800, 800 (187 SE 1) (1936) (Syllabus of the Court) (holding that a verification attesting that the allegations contained in a petition for equitable relief that the facts alleged therein were true and correct to the best of the signatory's knowledge and belief was not a positive verification).

[19] *See BEA Sys., Inc.*, 265 Ga. App. at 504 (identifying affidavits, depositions, or oral testimony as examples of "other satisfactory proofs").

[20] *State v. Jennings*, 362 Ga. App. 790, 796 (1) (c) (869 SE2d 183) (2022) (punctuation omitted); *accord Cutter v. Wilkinson*, 544 U.S. 709, 718 (I) (B), n.7 (125 SCt 2113, 161 LE2d 1020) (2005); *Stockert v. Rogers*, 361 Ga. App. 276, 279 n.4 (864 SE2d 116) (2021).

the case for it to address, in the first instance, the appellants' contention that S&H's motion for a temporary injunction should be denied for lack of proper verification.[21]

(b) Parnell also contends the trial court erred in granting S&H's motion for temporary injunctive relief because it failed to allege or prove the elements required for the trial court to grant such relief. But given our holding in Division 2 (a) *supra*, it is premature to address this claim of error.

3. Next, the RE/MAX parties argue the trial court erred in denying their motion to dismiss Count 2 of the complaint. We agree.

---

[21] *See Clayton Cty. v. City of Coll. Park*, 301 Ga. 653, 656-57 (2), (3) (803 SE2d 63) (2017) (vacating the trial court's order and remanding the case to the trial court to address an issue raised during oral argument below in the first instance); *Jennings*, 362 Ga. App. at 796 (1) (c) ("[B]ecause the trial court did not explicitly make findings of fact or rule upon this alternative argument . . . we vacate the court's order to the extent it implicitly ruled on this issue and remand for it to address and rule upon this argument in the first instance."); *Flanders v. State*, 360 Ga. App. 855, 855 (862 SE2d 152) (2021) ("Given the trial court's failure to address [the appellant's claim], we must vacate the trial court's order to the extent it at least implicitly denied that claim and remand for the trial court to address the claim in the first instance." (footnote omitted)); *Weintraub v. State*, 352 Ga. App. 880, 889 (1) (836 SE2d 162) (2019) ("Our Supreme Court has instructed that we may remand for further factual findings where the trial court's order lacks sufficient detail to enable meaningful appellate review.").

(a) As a preliminary matter, the RE/MAX parties maintain their motion to dismiss Count 2 of the complaint was converted into one for summary judgment because the trial court considered matters outside the pleadings.

In this regard, OCGA § 9-11-12 (b) provides, in part, that

> [i]f, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Code Section 9-11-56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Code Section 9-11-56.

As our Supreme Court has explained that

> [i]f, on motion to dismiss for failure to state a claim, the trial court elects to consider matters outside of the pleadings, the motion shall be treated as one for summary judgment and disposed of as provided in Code Section 9-11-56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by that code section.[22]

---

[22] *Cox Enter., Inc. v. Nix*, 273 Ga. 152, 153 (538 SE2d 449) (2000) (punctuation omitted); *accord Premier Eye Care Assocs., P.C. v. Mag Mut. Ins. Co.*, 355 Ga. App. 620, 623 (844 SE2d 282) (2020) (punctuation omitted).

On appeal, the RE/MAX parties identify two documents the trial court allegedly considered outside the pleadings—affidavits executed by Parnell and Michael Pops. But they provide no legal authority or record support for their apparent contention that the trial court considered this evidence in denying their motion to dismiss solely because these affidavits were filed. As previously explained, in its order denying the motion at issue, the trial court expressly noted that it considered only the pleadings, responsive pleadings, and oral argument in making its decision. And in the absence of either record or transcript showing otherwise, this Court "must presume the correctness of [a] ruling by the trial court."[23] Thus, we reject the RE/MAX parties' contention that the trial court improperly considered the affidavits at issue when denying their motion to dismiss, such that it was converted to one for summary judgment.

(b) The RE/MAX parties also argue the trial court erred in denying their motion to dismiss Count 2 of the complaint because S&H failed to allege facts or present any

---

[23] *Sawyer v. Cardiology of Ga, P.C.*, 258 Ga. App. 722, 723 (2) (575 SE2d 11) (2002) (punctuation omitted); *see Fine v. Fine*, 281 Ga. 850, 852 (2) (642 SE2d 698) (2007) (explaining that "[a]pplying the presumption of the trial court's faithful and lawful performance of its duties, . . . [and] in the absence of a transcript," the trial court's ruling on a matter was correct)).

evidence to establish the criteria necessary to sustain its claim for tortious interference with business relationships.

We review *de novo* the trial court's ruling on a motion to dismiss, "accepting as true all well-[pleaded] material allegations in the complaint and resolving any doubts in favor of the plaintiff."[24] Even so, we are under no obligation to "adopt a party's legal conclusions based on these facts."[25] Furthermore,

> [a] motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly

---

[24] *Williams v. DeKalb Cty.,* 308 Ga. 265, 270 (2) (840 SE2d 423) (2020) (punctuation omitted); *see Osprey Cove Real Est., LLC v. Towerview Constr., LLC*, 343 Ga. App. 436, 437 (1) (808 SE2d 425) (2017) ("While a trial court's ruling on a motion to dismiss for failure to state a claim is subject to de novo review, we accept the allegations of fact that appear in the complaint and view those allegations in the light most favorable to the plaintiff." (citation & punctuation omitted)).

[25] *Villa Sonoma at Perimeter Summit Condo. Ass'n, Inc. v. Commercial Indus. Bldg. Owners All., Inc.*, 349 Ga. App. 666, 667 (1) (824 SE2d 738) (2019) (punctuation omitted)); *see Novare Grp., Inc. v. Sarif*, 290 Ga. 186, 191 (4) (718 SE2d 304) (2011) (explaining that, in ruling on a motion to dismiss for failure to state a claim, "[a]ll well-pleaded facts are to be accepted as true[,] [but] . . . the trial court is not required to adopt a party's legal conclusions based on those facts").

introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.[26]

Turning to the instant case, a plaintiff may sustain a claim for tortious interference with a business relationship when he establishes

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.[27]

And there is no requirement that "a valid contract already exist to establish or maintain a claim for tortious interference with a business relationship."[28]

---

[26] *Williams*, 308 Ga. at 270 (2) (punctuation omitted); *accord Austin v. Clark*, 294 Ga. 773, 774-75 (755 SE2d 796) (2014).

[27] *Metro Atlanta Task Force for the Homeless, Inc. v. Ichthus Cmty. Tr.*, 298 Ga. 221, 230 (2) (c) (i) (780 SE2d 311) (2015) (punctuation omitted); *accord Stefano Arts v. Sui*, 301 Ga. App. 857, 861-62 (2) (690 SE2d 197) (2010).

[28] *Metro Atlanta Task Force for the Homeless, Inc.*, 298 Ga. at 230 (2) (c) (i).; *see Renden, Inc. v. Liberty Real Est. Ltd. P'ship III*, 213 Ga. App. 333, 334 (2) (444 SE2d 814) (1994) ("Proof of a valid and enforceable contract is not required as an element of a cause of action for intentional tortious interference with business relations.").

19

Here, S&H's complaint alleged the RE/MAX parties (1) hired Parnell to perform the same or substantially similar services to those he performed for S&H within the same geographic region; (2) conspired with or fostered Parnell's breach of the non-competition clauses in his employment agreement; (3) continued to breach the non-solicitation and non-competition clauses with Parnell even after receiving notice of the agreement; (4) acted with malice to injure S&H's current business relationships with its clients and customers or its prospective clients and customers; and (5) caused S&H's clients and customers or prospective clients and customers to discontinue their relationships or discussions for further business relationships with S&H.

As to the requirement that their tortious actions must be done without privilege,[29] the RE/MAX parties argue that S&H's claim for tortious interference with business relationships fails because the complaint did not allege they were a "stranger" to Parnell's employment agreement or his underlying business relationship with S&H. In this regard, our Supreme Court has emphasized that "*to be liable for tortious interference with business relations, one must be a stranger to the business*

---

[29] *See supra* note 27 & accompanying text.

20

*relationship giving rise to and underpinning the contract.*"[30] And when a defendant had "a legitimate interest in either the contract or a party to the contract, he is not a stranger to the contract itself or to the business relationship giving rise thereto and underpinning the contract."[31] Furthermore, the fact that "a defendant did not sign the contract [does not] preclude a finding that he was no stranger to the contract."[32] Simply put, all parties to "an interwoven contractual arrangement are not liable for tortious interference with any of the contracts or business relationships."[33] Thus, for this reason, "proof that the defendant was no stranger to the business relations at issue is fatal to the plaintiff's claim of tortious interference with business relations."[34]

---

[30] *Stefano Arts*, 301 Ga. App. at 862 (2) (punctuation omitted); *accord Renden, Inc.*, 213 Ga. App. at 334 (2) (b) ("The tortfeasor must be a 'stranger' to the business relationship at issue; a party, under appropriate circumstances, can be a non-signer of a particular contract and yet not be a stranger to the contract itself or to the business relationship giving rise thereto and underpinning it.").

[31] *Stefano Arts*, 301 Ga. App. at 862 (2) (punctuation omitted); *accord Cox v. City of Atlanta*, 266 Ga. App. 329, 332 (1) (596 SE2d 785) (2004).

[32] *Stefano Arts*, 301 Ga. App. at 862 (2) (punctuation omitted); *accord Cox*, 266 Ga. App. at 332-33 (1).

[33] *Stefano Arts*, 301 Ga. App. at 862 (2) (punctuation omitted); *accord Cox*, 266 Ga. App. at 333 (1).

[34] *Stefano Arts*, 301 Ga. App. at 862 (2) (punctuation omitted); *accord Cox*, 266 Ga. App. at 333 (1).

Here, even accepting the factual allegations in S&H's complaint as true, it is evident that the RE/MAX parties were not strangers to the employment agreement or to the underlying business relationship between Parnell and S&H—even if they were not signatories to the agreement. Indeed, according to the complaint, the RE/MAX parties hired Parnell to perform the same or similar real estate services that he performed for S&H, and they then conspired with him in his alleged contractual breaches. Not only that, the complaint alleged Parnell communicated with and solicited S&H's clients *on behalf of* the RE/MAX parties. In other words, the RE/MAX parties had a legitimate financial interest in Parnell potentially violating the agreement by inducing S&H's clients or potential clients to move their business from S&H to RE/MAX. Thus, S&H's complaint failed to allege any facts, much less sufficient facts, to establish that the RE/MAX parties were strangers to the agreement or business relationships underlying it, and thus, the trial court erred in denying their motion to dismiss Count 2 of the complaint.[35]

[35] *See Cox*, 266 Ga. App. at 333 (1) (holding that a city and its police department were not strangers to a prospective business relationship between a security service company and professional baseball team that would provide off-duty officers as security for the team's stadium, and thus, the security company did not have claim for tortious interference with business relations against city and police department); *Renden, Inc.*, 213 Ga. App. at 335 (2) (b) (holding that the plaintiff, who sublet a property from another entity was not a stranger to the lease agreement

22

For all these reasons, we reverse the trial court's denial of the RE/MAX parties' motion to dismiss Count 2 of the complaint, vacate its grant of S&H's motion for a temporary injunction, and remand the case for further proceedings consistent with this opinion.

*Judgment reversed in part, vacated in part, and case remanded with direction.*

*Mercier and Markle, JJ., concur.*

---

between that entity and its landlord, and thus, could not sustain a tortious interference claim against the landlord who owned the property); *see also Atlanta Mkt. Ctr. Mgmt., Co. v. McLane*, 269 Ga. 604, 608-09 (2) (503 SE2d 278) (1998) (holding that the trial court correctly granted summary judgment to a party as to a claim of tortious interference with a contract when the defendant was not a stranger to the employment contract at issue). *Cf. Metro Atlanta Task Force for the Homeless, Inc.*, 298 Ga. at 230 (holding that a claim of tortious interference with business relationships survived a motion for summary judgment when the defendants were "not in any way privy" to the business relationship at issue). Although S&H argues the RE/MAX parties cannot assert a "qualified privilege for acts alleged in the [c]omplaint[,]" it wholly fails to acknowledge or address the issue of whether the RE/MAX parties were strangers to the employment agreement or its business relationship with Parnell. Additionally, to the extent Parnell or the RE/MAX parties argue the employment agreement is void, it is premature for this Court to address that argument because this issue is still pending before the trial court, and in any event, we have reversed the trial court's grant of the temporary injunction, which is the ruling being appealed.